IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSETTA BUSSIE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN SECURITY INSURANCE | : | |
| COMPANY, et al. | : | NO. 20-3519 |

**MEMORANDUM**

**Padova, J.**                                                                                                                                  **June 1, 2021**

Plaintiff Rosetta Bussie initiated this action against Defendants American Security Insurance Company ("ASIC"), her insurer, and Pilot Catastrophe Services Inc. ("Pilot"), an insurance adjusting firm, after her home was damaged in a fire and she was dissatisfied with Pilot's final assessment of the damage and ASIC's resulting insurance payout. The Amended Complaint (the "Complaint") asserts claims against ASIC for breach of contract and bad faith pursuant to 42 Pa. Cons. Stat. § 8371, and claims against both Defendants for fraud, conspiracy to commit fraud, and deceptive conduct pursuant to the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-9.2. ASIC and Pilot have both filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all the claims against them. We held argument on the Motions on March 11, 2021. For the following reasons, we now grant in part and deny in part ASIC's Motion and grant Pilot's Motion in its entirety.

**I.      BACKGROUND**

The facts alleged in the Complaint or set forth in undisputedly authentic documents that are integral to the Complaint are as follows.[1] Plaintiff resides in a dwelling on West Franklin Street

---

[1] On a motion to dismiss pursuant to Rule 12(b)(6), we are permitted to consider not only the allegations of the complaint, but also "undisputedly authentic documents" on which the

in Morrisville, Pennsylvania. (Am. Compl. ("Compl.") ¶ 1.) At all pertinent times, a residential insurance policy issued by Defendant ASIC (the "Policy") covered the Morrisville premises. (Id. ¶ 4; see also Policy, Ex. 3 to ASIC Mot. to Dismiss.) The named insured under the Policy is Caliber Home Loans, Inc. ("Caliber"), which is Plaintiff's mortgage company, and Plaintiff is listed on the Policy as the Borrower.[2] (Policy at 6 of 18.) On November 19, 2019, a fire damaged the insured premises. (Compl. ¶ 6.) Plaintiff gave timely notice to ASIC of her covered loss. (Id. ¶ 7.)

Hillis Adjustment Agency ("Hillis"), Plaintiff's public adjuster, inspected the property on December 31, 2019, and prepared a January 6, 2020 estimate of damages, setting the Replacement Cost Value ("RCV") at $328,573.68. (Compl. ¶¶ 6, 8 and Ex. A at 2, 31 of 128.) The estimate included the cost to repair damage to the front and rear porches, entry/foyer, dining room, living room, five bedrooms, two bathrooms, kitchen, first and second floor hallways, laundry room, attic, basement, utility room, and rear entry stairwell. (See generally Compl. Ex. A.)

ASIC retained the services of Pilot to inspect the premises and adjust the loss. (Id. ¶ 8.) Pilot assigned the job to adjuster Andrew Felton, who met Hillis at Plaintiff's fire-damaged property on December 30, 2019. (Id. ¶¶ 9-10.) Thereafter, Felton prepared his own estimate of the loss, dated January 10, 2020, which set the RCV at $317,826.07 ("Pilot's First Estimate").

---

plaintiff's claims are based or that are "'*integral to or explicitly relied upon* in the complaint.'" Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, the parties agreed at oral argument that it was appropriate for us to consider certain documents that ASIC attached as Exhibits 1, 2, and 4 to its Motion to Dismiss—namely, the insurance policy at issue and certain correspondence between ASIC and Plaintiff's public adjuster. (N.T. 3/11/21, at 61-63.)

[2] In spite of Caliber being the named insured, ASIC stated at oral argument that there is no dispute that Plaintiff has standing to bring the claims asserted in this lawsuit. (N.T. 3/11/21, at 6.)

(Id. ¶ 11 and Ex. B at 67 of 128.) Pilot's First Estimate covered the same areas of the home as the Hillis estimate covered. (See generally id. Ex. B.) Felton sent this estimate to Hillis, but did not copy ASIC. (Id. ¶ 12.) Thereafter, Felton's supervisor reduced Pilot's First Estimate by more than half, preparing a January 14, 2020 estimate that set the RCV at $151,888.37 ("Pilot's Second Estimate"). (Id. ¶ 14 and Ex. C at 99 of 128.) Felton sent Pilot's Second Estimate to Plaintiff, but again did not copy ASIC. (Id. ¶ 15.) Hillis questioned Felton about the revisions between Pilot's First and Second Estimates, and Felton told Hillis that the changes were made by his supervisor and he had no control over them. (Id. ¶ 18.) In a second revision to Pilot's estimate, dated January 30, 2020, the RCV was reduced a second time, this time to $74,261.96 ("Pilot's Third Estimate"). (Id. ¶ 19 and Ex. D at 125 of 128.) Pilot's Third Estimate, like Pilot's First Estimate, covered the same areas of the home as Hillis's estimate covered. (See generally Compl. Ex. D.) However, by way of example, while the Hillis estimate provided Actual Cash Values ("ACVs") of $12,380.19 for the living room, $23,988.39 for the master bedroom, and $27,707.38 for the kitchen, Pilot's Third Estimate provided for ACVs of just $2,454.99 for the living room, $2,795.26 for the master bedroom, and $3,786.50 for the kitchen. (Compare Compl. Ex. A at 8, 9, 16 of 128, with Compl. Ex. D at 106, 109, 120 of 128.)

On February 6, 2020, ASIC sent a letter to Hillis, stating that it had completed review of the claim and issued a February 5, 2020 check payable to Plaintiff and Caliber for $67,774.50. (2/6/20 Letter, attached as Ex. 1 to ASIC's Mot. to Dismiss; Compl ¶ 24 (stating that ASIC refused to pay Plaintiff benefits pursuant to Pilot's First Estimate).) This payment was based on the Third Pilot Estimate of $74,261.96 and included a $3,987.46 deduction for depreciation, as well as a $2,500 deduction for the Policy's deductible. (Compl. ¶¶ 41-42.) Plaintiff endorsed the check from ASIC, but Caliber has been holding the money because Plaintiff lacks sufficient funds to

3

make the necessary repairs to her property. (Id. ¶¶ 44, 47.)

On February 20, 2020, ASIC sent Hillis a letter in which it acknowledged that there was a dispute as to the amount of Plaintiff's loss. (2/20/20 Letter, attached as Ex. 2 to ASIC's Mot. to Dismiss.) ASIC stated in the letter that it was "invoking [its] right to appraisal as outlined in the insurance policy contract." (Id. at 1.) The Policy includes the following Condition:

> **8. Appraisal.** If **you** and **we** fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the **described location** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Policy at 13 of 18.)[3] The Policy further provides in a paragraph entitled "**Action Against Us**" that "[n]o action can be brought unless the [Policy] provisions have been complied with . . . ." (Id. at 14 of 18.) In its February 20, 2020 letter, ASIC identified an appraiser to take part in the appraisal process and asked Hillis to "[p]lease advise [it] of the selection of [its] named appraiser so we can move forward in this process." (2/20/20 Letter at 3.) The parties are in agreement that Plaintiff did not identify an appraiser.

Plaintiff commenced this action by Writ of Summon in the Court of Philadelphia Common Pleas of Philadelphia County on March 21, 2020, and filed a complaint in that court on June 29, 2020. ASIC subsequently removed the action to this Court based on diversity of citizenship. ASIC then moved to dismiss the complaint and Plaintiff filed her Amended Complaint, which is

---

[3] The February 20 letter purports to quote an appraisal provision in an Endorsement to the Policy, and ASIC repeats this quotation in its brief, but the language quoted is different from the language that appears in the Policy. (Compare 2/20/20 Letter at 2, with Policy at 6.) ASIC agreed at oral argument that the letter misquotes the Policy and that the controlling language is that which appears in the Policy. (N.T. 3/11/21, at 14.)

4

now the operative complaint.

The Complaint contains five Counts. Count I asserts a breach of contract claim against ASIC, alleging that ASIC breached its contractual obligation to pay full and proper benefits to Plaintiff for a loss covered under the Policy. Count II asserts a bad faith claim against ASIC pursuant to 42 Pa. Cons. Stat. § 8371, based on ASIC's reduction of the value of Plaintiff's loss to a fraction of Pilot's First Estimate (prepared by the field adjuster), with no reasonable basis to do so. Count III asserts a fraud claim against ASIC and Pilot, based on their alleged misrepresentations as to the amount of Plaintiff's covered claim. Count IV asserts a conspiracy to commit fraud claim against ASIC and Pilot, alleging that Defendants conspired to misrepresent the amount of Plaintiff's covered claim under the Policy in an attempt to deny her the coverage to which she was entitled. Count V asserts a UTPCPL claim against ASIC and Pilot, alleging that Defendants engaged in deceptive conduct under the UTPCPL's catch-all provision by misrepresenting Plaintiff's costs to repair her home following her fire loss. See 73 Pa. Stat. Ann. § 201-2 (defining "unfair or deceptive practices" under the statute).

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we typically "consider only the complaint, exhibits attached to the complaint, [and] matters of public record." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). However, we may also consider "undisputedly authentic documents if the complainant's claims are based upon these documents," id. (citation omitted), and "'document[s] *integral to or explicitly relied* upon in the complaint,'" Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). We take the factual allegations of the complaint as true and

draw all reasonable inferences in favor of the plaintiff. DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'" Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (quoting Iqbal, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 786-87 (quoting Iqbal, 556 U.S. at 679). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

### A. Count I – Breach of Contract

The Complaint asserts in Count I that ASIC is liable for breach of contract because it failed to pay full and proper benefits for a loss covered under the Policy. ASIC argues that we should dismiss this claim for failure to state a claim upon which relief can be granted because it has invoked its right to appraisal under the Policy's Appraisal Provision and, pursuant to the terms of the Policy, Plaintiff is required to engage in the appraisal process prior to commencing suit.

In Pennsylvania, appraisal provisions in insurance contracts are valid and enforceable. Ice City v. Ins. Co. of N. Am., 314 A.2d 236, 240 (Pa. 1974) (citation omitted). Indeed, the "settlement of disputes by . . . appraisal is the approved public policy of th[e] Commonwealth." Id. at 241 (citations omitted). Moreover, Pennsylvania statutory law explicitly requires fire insurance policies covering property in the Commonwealth to include appraisal clauses. 40 Pa. Stat. Ann. § 636(2). As the Pennsylvania Supreme Court has stated, "[w]hen . . . the conditions precedent to appraisal are satisfied, i.e., the admission of liability but a dispute only as to the dollar value of the loss, appraisal is an entirely appropriate means for settling the dispute, and is . . . the favored practice." Ice City, 314 A.2d at 240 (citation omitted). Accordingly, "once there is a dispute over the amount of loss and either party demands an appraisal, the [appraisal] clause becomes mandatory and the other party must select an appraiser." Prof'l, Inc. v. Mut. Benefit Ins. Co., No. 1155 WDA 2019, 2020 WL 6743978, at *6 (Pa. Super. Ct. Nov. 17, 2020). On the other hand, where "liability is denied, . . . the appraisal provision . . . may not bar the insured from bringing an action for relief in the courts." Ice City, 314 A.2d at 239 (footnote omitted); McGourty v. Pennsylvania Millers Mut. Ins. Co., 704 A.2d 663, 664 (Pa. Super. Ct. 1997) ("An appraisal is limited to determining the amount of the loss with all other issues reserved for

settlement by either negotiation or litigation . . . ." (citation omitted)). In other words, "a coverage dispute is not within the scope of an appraisal clause[.]" Prof'l, Inc., 2020 WL 6743978, at *7 (citing Ice City, 314 A.2d at 241) (add'l citation omitted).

Here, ASIC asserts that the dispute alleged in the Complaint is one as to the amount of Plaintiff's loss. It therefore argues that its invocation of the appraisal process was appropriate and the Policy prohibits Plaintiff from bringing a breach of contract claim in this court. (See Policy at 14 of 18 (stating that "[n]o action can be brought unless the [Policy] provisions have been complied with").) Plaintiff maintains, however, that the Complaint alleges a coverage dispute and that the appraisal process is therefore neither mandatory nor appropriate.

Whether a dispute is properly characterized as one over coverage or the amount of loss depends upon whether the insurer has denied or accepted liability for the losses sustained as a result of a covered peril. See Williamson v. Chubb Indem. Ins. Co., Civ. A. No. 11-6476, 2012 WL 760838, at *4 (E.D. Pa. Mar. 8, 2012) (citations omitted). So, for instance, when an insurer refuses to cover a loss because the coverage provisions of the policy do not include the asserted loss or because the loss is subject to a policy exclusion, the parties' dispute is one over coverage. See, e.g. Robinson v. Allstate Prop. & Cas. Ins. Co., 306 F. Supp. 3d 672, 679 (E.D. Pa. 2018) (addressing insurance coverage dispute over fire loss and concluding that, where the insured intentionally set the fire, there was no coverage under the policy because the loss was not "sudden and accidental" and that, even if there were coverage, the loss was excluded from coverage pursuant to an intentional act exclusion). On the other hand, where an insurer agrees that the loss falls within the coverage provisions of the policy and is not subject to any policy exclusion, and it only disputes, as a factual matter, the amount of damages that the peril caused, the dispute concerns the amount of the loss. Williamson, 2012 WL 760838, at *4 (stating that a dispute

concerns the amount of loss "when the parties merely disagree over the extent of damage or whether a covered peril is the cause of certain damage" (citations omitted)); id. (concluding that "disagreement over the necessary repairs and methods of repair from the covered peril" was "a dispute as to amount of loss not as to coverage" (citations omitted)).

Here, the only inference to be drawn from the Complaint's allegations and its exhibits is that ASIC has accepted liability for the loss arising out of the November 19, 2019 fire. Not only does the Complaint allege that ASIC issued payment on Plaintiff's fire loss claim in the amount of $67,774.50, but Pilot's Third Estimate, on which the payment was based, plainly provides coverage and payment for every area of the house that Plaintiff claims was damaged. (See Compl. ¶ 42 and Ex. D.) Furthermore, defense counsel confirmed at oral argument that ASIC has accepted coverage for the entire property, including every room of the house, and has agreed to pay what is necessary to make Plaintiff whole for her loss. (N.T. 3/11/21, at 7-9); see also id. at 11 ("ASIC accepted full coverage for [the fire] loss.")

Plaintiff nevertheless argues that we should characterize her dispute with ASIC as a coverage dispute because ASIC agreed to cover just 23% of Pilot's First Estimate and fully rejected almost 200 of the 587 line items on the Hillis estimate. The primary authority on which Plaintiff relies is Banks v. Allstate Insurance Company, Civ. A. No. 91-6982, 1992 WL 102885 (E.D. Pa. May 7, 1992). In Banks, the plaintiffs' bathroom collapsed and the insurance company agreed to compensate them for damages to their home's bathroom, but disagreed as to the amount of that loss and did not agree to compensate them for any damage to other areas of the home. Id. at *1. Noting that "[l]iability ha[d] not been admitted for the entire loss" and that "[t]he amount of loss from the admitted coverage [was] considerably less than the losses arising from the disputed coverage," the Banks court concluded that "there [was] a dispute as to coverage as well as

9

to amount of loss." Id. at *2-3. It therefore refused the insurer's request that it order the plaintiffs to proceed with the insurance policy's appraisal process. Id. at *3.

Plaintiff argues that we should conclude, based on Banks, that when an insurer refuses to pay the majority of a claimed loss and rejects certain line items of damages, the dispute is necessarily a coverage dispute, not one as to the amount of the loss. However, we read Banks to stand only for the unremarkable proposition that when an insurer admits coverage for one area of a house that is damaged and denies any coverage for another area of the house for which the plaintiff claims damages, there is a coverage dispute as to the latter area. Accord Spector v. Am. Auto. Ins. Co., Civ. A. No. 10-1731 (E.D. Pa. July 2, 2010) (order denying motion to compel appraisal) (Ex. 5 to Pl.'s Mem. in Resp. to ASIC's Mot.) (observing that insurer "expressly denied coverage for the damages to the exterior portion of Plaintiff's property"). While the Banks court also observed that "[t]he amount of loss from the admitted coverage [was] considerably less than the losses arising from the disputed coverage," this observation was not critical to its conclusion that the parties had a coverage dispute; rather, it was merely an observation that the coverage dispute predominated over the dispute as to the amount of loss. See Banks, 1992 WL 102885, at *3.

As noted above, unlike the situation in Banks, ASIC has not denied coverage for any area of Plaintiff's home and, instead, concedes that the Policy covers all fire loss damage, including damage to all of the specific areas of the home listed in the Hillis estimate. Accordingly, we reject Plaintiff's assertion that Banks supports a conclusion that the dispute in the instant case is a coverage dispute.

We also simply disagree with Plaintiff's argument that an insurer's refusal to compensate for certain line items in a plaintiff's estimate of damages compels a conclusion that there is a coverage dispute that is not subject to the contractual appraisal process. The purpose of an

10

appraisal is "to ascertain the nature and breadth of the loss or damages and whether the property in question requires repair or replacement." Prof'l, Inc., 2020 WL 6743978, at *6 (citations omitted); (see also Compl. ¶¶ 6, 14 (acknowledging that an adjuster preparing an estimate regarding fire damage necessarily opines as to the extent of the damages caused by the fire and "the repairs needed to restore [the affected] property").) Consequently, two adjusters preparing appraisals for a fire loss may disagree as to the scope of damage caused by the fire or may come to different conclusions as to the extent of the repairs that are necessary to repair the damage. While these disagreements will necessarily result in discrepancies between line items in the two adjusters' estimates, they in no way suggest that coverage is in dispute, but only demonstrate that there is a factual dispute as to the extent of damages and the necessary repairs. Such factual disputes concern the amount of the loss and are properly subject to the appraisal process. See Correnti v. Merchants Preferred Ins. Co., Civ. A. No. 12-6303, 2013 WL 373273, at *2 (E.D. Pa. Jan. 31, 2013) (enforcing appraisal provision where parties disputed only the "extent of damage" to plaintiffs' home (citing Williamson, 2012 WL 760838, at *4; and Sydney v. Pac. Indem. Co., Civ. A. No. 12–1897, 2012 WL 3135529, at *4 (E. D. Pa. Aug. 1, 2012)); see also Sydney, 2012 WL 3135529, at *1, 3 (enforcing appraisal provision where parties disagree over whether roof should be repaired or replaced).

For all of these reasons, we conclude that the dispute presented in Plaintiff's breach of contract claim is a dispute as to the amount of loss, not a coverage dispute and that, as a result, Plaintiff cannot prosecute her claim in this Court but must proceed with the appraisal process. We therefore grant ASIC's Motion insofar as it seeks dismissal of Plaintiff's breach of contract claim in Count I because it fails to state a claim upon which relief can be granted. However, we dismiss that claim without prejudice in recognition of the fact that "appraisal . . . is subject to

limited judicial review." Boulevard Assocs. v. Seltzer P'ship, 664 A.2d 983, 987 (Pa. Super. Ct. 1995).

**B.     Count II – Bad Faith**

Count II of the Complaint asserts a bad faith claim against ASIC pursuant to 42 Pa. Cons. Stat. § 8371. Specifically, the Complaint alleges that ASIC violated § 8371 by treating Plaintiff unreasonably and unfairly with respect to its adjustment of Plaintiff's covered losses insofar as it intentionally reduced the value of Plaintiff's loss to a fraction of Pilot's First Estimate with no reasonable basis. (Compl. ¶¶ 30-32.)

Under the bad faith statute, a court may award compensation to an insured if it finds that "the insurer has acted in bad faith toward the insured." 42 Pa. Cons. Stat. § 8371. Generally, in order to recover for a claim of statutory bad faith, a plaintiff must establish that "the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (citing W.V. Realty, Inc. v. N. Ins. Co., 334 F.3d 306, 311 (3d Cir. 2003). However, "'[s]ection 8371 is not [strictly] restricted to an insurer's bad faith in denying a claim.'" Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1187 (Pa. Super. Ct. 2007) (quoting Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006)). Rather, bad faith "'encompasses a wide variety of objectionable conduct'" including "'lack of good faith investigation into facts, and failure to communicate with the claimant.'" Id. at 1187-88 (quoting Condio, 899 A.2d at 1142); see also Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) ("Bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." (citation omitted)).

ASIC argues that the Complaint fails to state a bad faith claim upon which relief can be granted because its allegations make clear that ASIC did not deny Plaintiff's claim, but rather issued payment on that claim. Moreover, it argues that to the extent that the Complaint alleges that the parties have a disagreement as to the claim's value, ASIC has exercised its contractual right to invoke the appraisal process to resolve their differences of opinion. ASIC thus maintains that the Complaint fails to allege the necessary elements of a bad faith claim because its fails to allege facts that support an inference that ASIC has either denied Plaintiff's claim or acted knowingly or recklessly in doing so. As a result, ASIC argues that we should dismiss the bad faith claim or, in the alternative, that we should stay the bad faith claim pending the outcome of the appraisal process, which will necessarily resolve the parties' disagreement as to the claim's value.

Contrary to ASIC's characterization, however, Plaintiff's bad faith claim is not grounded wholly on ASIC's failure to pay the full value of Plaintiff's claim but, rather, is grounded largely on allegations that ASIC worked together with Pilot to twice reduce the loss estimate prepared by Pilot's field adjuster, that there was no reasonable basis for those reductions, and that ASIC essentially engineered those reductions in order to save itself money. (Compl. ¶¶ 17, 19, 21, 31-33.) ASIC suggested at oral argument that these allegations are implausible, that "there [was] nothing [to] prevent Pilot from revising its estimates over time," and that "ASIC was sort of out of the loop" on the revisions. (See N.T. 3/11/21, at 18-19.) However, reading the allegations of the Complaint in the light most favorable to Plaintiff, we cannot overlook or simply discount the allegations as to ASIC's involvement in the production of loss estimates and then dismiss the bad faith claim on that basis. At the same time, we conclude that the bad faith claim is premature because ASIC has not yet denied Plaintiff's insurance claim and the extent to which it may ultimately deny her claim will not be resolved until completion of the appraisal process. We

therefore conclude that the most appropriate course of action at this point in time is to stay the bad faith claim pending completion of the appraisal process. See, e.g., Williamson, 2012 WL 760838, at *5 (finding plaintiff's bad faith claim "premature prior to completion of the appraisal process" and staying the bad faith claim because insurer had not yet denied the claim but merely disputed the amount of the loss).

For these reasons, we deny ASIC's Motion insofar as it seeks dismissal of the bad faith claim in Count II but grant that Motion insofar it requests, in the alternative, that we stay the bad faith claim pending completion of the appraisal process.

### C. Counts III and IV – Fraud and Conspiracy to Commit Fraud

Counts III and IV of the Complaint assert claims against both ASIC and Pilot for fraud and conspiracy to commit fraud, based on allegations that they misrepresented the value of Plaintiff's fire loss claim in Pilot's Third Estimate, on which ASIC based its loss assessment. Both Defendants have moved to dismiss these claims, asserting that the claims are insufficiently pled under the heightened pleading requirements for fraud claims set forth in Federal Rule of Civil Procedure 9(b).

To state a claim for fraud under Pennsylvania law, a plaintiff must allege:

> "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

Gruenwald v. Advanced Computer Applications, Inc., 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999) (quoting Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)). "A misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated." Colaizzi v. Beck, 895 A.2d 36, 39-40 (Pa. Super. Ct. 2006) (citation omitted).

Under Rule 9(b) plaintiffs are obligated to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pursuant to that standard, a complaint "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)), abrogated on other grounds by Twombly, 550 U.S. 544.

To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citations omitted). Moreover, "there can be no cause of action for civil conspiracy to commit [an] act absent a civil cause of action for that particular act." Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs., Civ. A. No. 08-2926, 2010 WL 2470992, at *5 (E.D. Pa. June 14, 2010) (alteration in original) (quotation omitted). Thus, where a plaintiff "fail[s] to appropriately plead fraud against [a defendant], there can be no cause of action for civil conspiracy against [that defendant]." Id.

Here, the Complaint alleges that Defendants made misrepresentations insofar as they advised her that the value of her claim was just $74,261.96 when they knew that the fair value of her claim was at least $317,826.07, i.e., the amount set forth in Pilot's First Estimate. (Compl. ¶ 38.) According to the Complaint, these "misrepresentations . . . were material to the transaction between Plaintiff and Defendants because they were intended to mislead Plaintiff into believing her loss was of a much lesser value than it actually was." (Id. ¶ 39.) The Complaint further alleges that Defendant knew that their representations were false because they knew about the

15

Hillis estimate and Pilot's First and Second Estimates and they knew that there was no reasonable justification for the reductions made to Pilot's First and Second Estimates in order to produce Pilot's Third Estimate. (Id. ¶¶ 40-41.) Finally, it alleges that Plaintiff justifiably relied on the misrepresentations insofar as she "endors[ed] Defendant's check for payment of her claim," and that she was damaged on account of this reliance because she has been unable to make the necessary repairs to her property. (Id. ¶ 44; see also id. ¶ 46.)

ASIC and Pilot argue that both the fraud and conspiracy claims should be dismissed because the Complaint does not adequately allege the essential elements of a fraud claim. Among other deficiencies, they note that the Complaint does not plausibly allege that Plaintiff relied on the alleged misrepresentations in Pilot's Third Estimate and instead alleges facts that make clear that she consistently relied on her own public adjuster's estimate, i.e., the Hillis Estimate ($328,573.68), and/or the First Pilot Estimate ($317,826.07).

As noted above, the Complaint alleges that Plaintiff justifiably relied on the misrepresentations as to the value of her loss when she endorsed the check that she received form ASIC. (Id. ¶ 44.) However, as Defendants correctly observe, the Complaint makes clear that Plaintiff never actually relied on that valuation, as it alleges that she has been steadfast in her assertions that the valuation in Pilot's Third Estimate was wrong and that the Hillis Estimate or, at a minimum, Pilot's First Estimate, is the correct valuation. (See id. ¶ 24 (stating that Plaintiff demanded that ASIC pay benefits pursuant to Pilot's First Estimate)). Indeed, the Complaint does not allege—or raise a reasonable inference—that Plaintiff endorsed ASIC's check because she believed that Defendants' valuation of her loss in Pilot's Third Estimate was correct. It alleges to the contrary that she demanded that she be paid pursuant to Pilot's First Estimate and that she promptly commenced the present action (in state court on March 21, 2020, just six weeks

after receiving payment from ASIC) because she believed that there was no reasonable basis for that estimate.[4] (See id. ¶¶ 24, 31-32, 35.) Accordingly, even reading the Complaint in the light most favorable to Plaintiff, we cannot conclude that it plausibly alleges that she ever relied on any alleged misrepresentation in Pilot's Third Estimate, much less that she justifiably relied upon it.

In the absence of any plausible allegation of Plaintiff's justifiable reliance on ASIC's and Pilot's alleged misrepresentations, we conclude that Counts III and IV of the Complaint fails to state fraud and conspiracy to commit fraud claims upon which relief can be granted. We therefore grant Pilot's and ASIC's Motions insofar as they seek dismissal of these claims.

### D. Count V – UTPCPL

Count V asserts a UTPCPL claim for unfair and deceptive practices, contending that that ASIC and Pilot engaged in deceptive and misleading conduct in violation of 73 Pa. Stat. Ann. § 201-2(4)(xxi),[5] insofar as they misrepresented the amount of Plaintiff's loss in Pilot's Third Estimate. ASIC argues, inter alia, that we should dismiss the UTPCPL claim against it because the Complaint does not allege any facts indicating her reliance, justifiable or otherwise, on any alleged misrepresentation that caused her a loss. Pilot likewise moves to dismiss the UTPCPL claim against it, arguing that it sent Plaintiff the estimates, Plaintiff suffered no ascertainable loss, and a UTPCPL claim cannot be based on a failure to be paid what an insured thinks that she is

---

[4] It is worth reiterating that the Complaint alleges that Defendants were aware of the falsity of their alleged representations in the Third Pilot Estimate "because [they] knew about the Hillis Estimate and Pilot's First and Second Estimates, which were for much higher sums." (Compl. ¶ 40.) Taking this allegation as true as we must on a motion to dismiss, the Complaint does not allow for an inference that Plaintiff herself was not aware of the falsity of Defendants' representations in Pilot's Third Estimate because it alleges that Plaintiff also knew about the Hillis Estimate and Pilot's First and Second Estimates. (Id. ¶¶ 6-7, 11-16.)

[5] This provision defines "unfair or deceptive acts or practices" to include "[e]ngaging in any . . . fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi).

owed under an insurance policy.

As a general matter, the UTCPCL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201-3. To state a plausible claim under the UTPCPL, a complaint must allege that:

> 1) [the plaintiff] purchased or leased goods or services primarily for a personal, family, or household purpose; 2) [the plaintiff] suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL.

Baynes v. George E. Mason Funeral Home, Inc., Civ. A. No. 09-153, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011) (citing 73 Pa. Stat. Ann. § 201-9.2(a)). The complaint must also allege that the plaintiff justifiably relied on the deceptive conduct. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221-22 (3d Cir. 2008); Am. Express Bank, FSB v. Martin, 200 A.3d 87, 94–95 (Pa. Super. Ct. 2018) (citation omitted). In other words, the complaint must allege that knowledge of the deception "would have changed [the plaintiff's] conduct." Hunt, 538 F.3d at 227.

Here, as explained above, the Complaint does not plausibly allege that Plaintiff justifiably relied on Defendants' alleged misrepresentations in Pilot's Third Estimate as to the value of her loss. While Plaintiff argues that she need not plead justifiable reliance to state a UTPCPL claim upon which relief can be granted, this is simply wrong. See Hunt, 538 F.3d at 221-22; Am. Express, 200 A.3d at 94-95. Consequently, because the Complaint does not allege justifiable reliance, an essential element of a UTPCPL claim, it fails to state a UTPCPL claim upon which relief can be granted.

Moreover, we note that recent Pennsylvania caselaw has stated that "[t]he UTPCPL applies to consumer transactions, which are statutorily defined[, and] the handling of an insurance claim does not meet the statutory definition." Wenk v. State Farm Fire & Cas. Co., 228 A.3d 540, 551 (Pa. Super. Ct. 2020) (citation omitted). Under this authority, "[t]he UTPCPL applies to the **sale**

of an insurance policy, it does not apply to the **handling** of insurance claims," and the bad faith statute, 42 Pa. Cons. Stat. § 8371, "provides the exclusive statutory remedy applicable to claims handling." Wenk, 228 A.3d at 550 (quotation omitted); Kelly v. Progressive Advanced Ins. Co., 159 F. Supp. 3d 562, 564-65 (E.D. Pa. 2016) (stating that "[t]he UTPCPL . . . applies to conduct surrounding [an] insurer's pre-[contract] formation conduct" and not "to the handling of insurance claims" (citing Gibson v. Progressive Specialty Ins. Co., Civ. A. No. 15-1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015))). Accordingly, for this reason as well, we conclude that Plaintiff's UTPCPL claim, which is grounded on deceptive conduct in the handling of her insurance claim, cannot state a claim upon which relief can be granted. We therefore grant ASIC's and Pilot's Motions insofar as they seek dismissal of Plaintiff's UTPCPL claim in Count V.

## IV. CONCLUSION

For the foregoing reasons, we grant in part and deny in part ASIC's Motion to Dismiss, and we grant Pilot's Motion to Dismiss in its entirety.[6] Specifically, we dismiss the breach of contract claim without prejudice, stay the bad faith claim pending completion of the appraisal process, and dismiss with prejudice the fraud, conspiracy to commit fraud, and UTPCPL claims.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

---

[6] Plaintiff has requested that she be given leave to amend her Complaint if we find that any of her claims were not sufficiently pled. However, Plaintiff suggests no factual or legal bases pursuant to which she could cure the pleading deficiencies that we have identified in this Memorandum. Accordingly, we conclude that any amendment would be futile, and we deny her request to amend her Complaint for that reason. See Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) (stating that "[d]ismissal without leave to amend is justified . . . on the grounds of . . . futility" (citation omitted)).